UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAN LONDO,

    Plaintiff,                       Civil Case No: 2:18-cv-00223

v                                  Hon. Gordon J. Quist

UP HEALTH SYSTEMS-MARQUETTE,

    Defendant.

_____/

| | |
|---|---|
| Sandra Hanshaw Burink (P68619) | Susan D. MacGregor (P41741) |
| Hanshaw Burink, PLC | Kitch Drutchas Wagner Valitutti & Sherbrook |
| Attorneys for Plaintiff | Attorneys for Defendant |
| 501 Hillside Drive | 1440 West Ridge Street, Suite C |
| Marquette, MI  49855 | Marquette, MI  49855 |
| (906) 273-1551 | (906) 228-0001 |
| shburink@hb-lawofffices.com | susan.macgregor@kitch.com |
| | |
| | Mark W. Peters (TN BPR No. 018422) |
| | T. Connor Dugosh (TN BPR No. 036788) |
| | Waller Lansden Dortch & Davis LLP |
| | Attorneys for Defendant |
| | 511 Union Street, Suite 2700 |
| | Nashville, TN 37219 |
| | (615) 244-6380 |
| | mark.peters@wallerlaw.com |
| | connor.dugosh@wallerlaw.com |

---

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

## I.   <u>Introduction</u>

Plaintiff's distractingly hodgepodge Response is procedurally and legally insufficient to save her claims from dismissal.  Procedurally, she claims that material issues of disputed fact preclude summary judgment.  But rather than actually identifying

4824-8577-5291.2

those purported disputed facts concisely and with complete and accurate citation to the record, she proposes her own "Counter-Statement of Material Facts" that distorts and mischaracterizes witnesses' testimony, spends pages discussing immaterial facts, and ignores altogether undisputed material facts (including her own deposition admissions) that are fatal to her claims.  In doing so, she violates Fed. R. Civ. P. 56 by taking an "everything including the kitchen sink" approach that requires the Court to "hunt the peanut"[1] and discern for itself whether there are disputed issues of *material* fact.[2]

Legally, Plaintiff's Response fails in multiple respects too.  First, it does not respond at all to the Hospital's legal analysis of Plaintiff's hostile work environment claim and thus abandons that claim.  Similarly, it ignores the Hospital's legal analysis that Plaintiff brought her disability retaliation claim under the wrong statute, thereby abandoning her ECLRA claim too.  Second, remarkably, she does not analyze at all, much less try to distinguish, even a single case upon which the Hospital relies.  Instead, she requires clairvoyance from the Hospital by arguing that the Hospital should or must have known that she was disabled—even though she admits she never told anyone that she was—because she said she was "anxious" and had difficulty "concentrating."  As a

---

[1] *Greer v. Board of Educ. of the City of Chicago,* 267 F.3d 723, 727 (7th Cir. 2001) ("[A] lawsuit is not a game of hunt the peanut.  Employment discrimination cases are extremely fact intensive and neither appellate courts nor district courts are 'obliged in our adversary system to scour the record looking for factual disputes . . . .'" (quotation omitted)).

[2] Plaintiff's Brief also is procedurally deficient because it does not contain the certification required by Local Rule 7.2(b)(ii) and includes more than the maximum number of pages of supporting documents permitted by Local Rule 7.1(b).

4824-8577-5291.2

matter of law, that is not enough.  Indeed, accepting Plaintiff's arguments as true would place employers in a Catch-22 of violating the ADA by regarding an employee as disabled simply because she says she has "difficulty in concentrating" or by not deeming an employee as disabled because she says the same (and then neglecting its duty to provide a reasonable accommodation).  Third, Plaintiff urges the Court to ignore her factual admissions that she engaged in the conduct for which she was counseled and ultimately terminated—including but not limited to her final error of failing to schedule follow-up medical care for a patient with a lung mass, which resulted in that patient's emergency surgery—and substitute her egocentric view that she was "meeting all expectations" and was a "competent" employee despite all objective evidence to the contrary.  The former provides the honest and good faith basis for the Hospital's non-discriminatory decision and the latter does not create pretext.

Put simply, Plaintiff has failed to support her claims with applicable law or undisputed material facts.  No issue of material fact exists in the record, and this Court should grant the Hospital's Motion for Summary Judgment as a matter of law and dismiss this case in its entirety.

## II.    Legal Analysis

### A.    Plaintiff Abandoned Her ADA Hostile Work Environment and Her ECLRA Retaliation Claims by Failing to Respond to the Hospital's Motion.

A plaintiff abandons a claim if the defendant moves for summary judgment on the claim and the plaintiff fails to address it in her response.  *Ritchie v. Coldwater Cmty. Schs*, 947 F. Supp. 2d 791, 801 (W.D. Mich. May 22, 2013) (Quist, J.); *see also Brown v. VHS*

4824-8577-5291.2

3

*of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear:  a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").

Here, the Hospital moved for summary judgment on Plaintiff's ECLRA retaliation claim on two substantive grounds: she sued under the wrong statute and she could not prove pretext.  (Docket No. 37 at 18-26).  Plaintiff responded to the latter, but not the former.  (Docket No. 40 at 17-21).  Accordingly, she has abandoned that claim.

Additionally, the Hospital moved for summary judgment on Plaintiff's hostile work environment claim.  (Docket No. 37 at 26-31).  Plaintiff did not respond at all.  Thus, she abandoned that claim too.

As a matter of law, Plaintiff's failure to respond to the Hospital's arguments on her retaliation and hostile work environment claims requires that those claims be dismissed.

**B.     No *Prima Facie* Case Under the ADA.**

   *1.     The Hospital Did Not Know Plaintiff Was Disabled*

Plaintiff identifies her medical condition as "anxiety."  (Docket No. 40 at 13).  She says that the Hospital should have known that she had that medical condition from her generalized comments.  (*Id.* at 15-17).  But courts have explicitly rejected that notion. *See, e.g.*, *Boyd v. Zepf Ctr.*, 2020 U.S. Dist. LEXIS 55829, *12-16 (N.D. Ohio Mar. 31, 2020) (finding no knowledge of major depressive disorder and generalized anxiety disorder existed when plaintiff disclosed she "was feeling frustrated, anxious, overwhelmed" and cried during a work meeting); *Van Compernolle v. City of Zeeland*, 2006 U.S. Dist. LEXIS 32963, *36 (W.D. Mich. May 24, 2006) (Bell, J.) ("[S]peculation

4824-8577-5291.2

about the cause of a problem does not impute knowledge to Defendants."); *Rogers v. CH2M Hill, Inc.*, 18 F. Supp. 2d 1328, 1337 (M.D. Ala. 1998) (finding that vague statements referencing "feeling kind of down and depressed" did not give notice to employer of plaintiff's disability).   A finding otherwise would require employers to have clairvoyance and risk regarding an employee as disabled every time she says she is "anxious" or "sad" or has a "headache" because those things would—in Plaintiff's view—put the employer on notice of generalized anxiety disorder and depression even though the real "cause" could be, respectively, that the employee was not catching on to her job duties quick enough or her cat died or she ate ice cream too quickly and had a "brain freeze."  Respectfully, Plaintiff asks too much.  The result she urges is both legally and practically nonsensical.  *See Hammon v. DHL Airways, Inc.*, 135 F.3d 441, 450 (6th Cir. 1999) ("An employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation."); *Joyce v. Cleveland Clinic Found.*, 2014 U.S. Dist. 137477, *27-28 (N.D. Ohio Sept. 29, 2014) (finding that employer was not on notice of a request for an accommodation when the plaintiff's requests to be kept separate from a coworker "was not traceable to a disability").

Plaintiff also argues that her *symptoms* should have put the Hospital on notice of her purported disability, pointing to Mr. Breeser's knowledge of her self-described and diagnosed "panic" attack.[3]  (Docket No. 40 at 7, 16, 19).  The case upon which she relies,

---

[3] All other instances where Plaintiff suggests that her "symptoms" were severe enough to constitute notice are not symptoms of a disability at all, but rather the instances she recalls telling someone that she felt "anxious" about her work or Ms. Harger.  (Docket No. 40 at 16).

*Nilles v. Givauden Flavors Corp.*, 521 Fed. App'x 364 (6th Cir. Mar. 29, 2013), actually supports the Hospital.  There, the Sixth Circuit affirmed that the plaintiff failed to satisfy the knowledge prong of his *prima facie* disability discrimination case, finding that the decision-maker's knowledge of the plaintiff's illness and leaves of absence equated only to knowledge of *symptoms* of the disability, not the disability itself.  *Id.* at 369.  Like the plaintiff in *Nilles*, Plaintiff relies on the very limited information she gave to Ms. Goodwin, Mr. Breeser, and Ms. Casey about "feeling anxious" or having some unidentified "medical condition" to conclude everyone must or should have been aware of her "severe symptoms" of anxiety and depression.  (*See* Docket No. 40 at 15-17).  That is not enough, particularly where, as noted above, "the few symptoms [] evident could be due to alternative causes."  *Yarberry v. Gregg Appliances, Inc.*, 625 Fed. App'x 731, 738 (6th Cir. Sept. 3, 2017).  Plaintiff's ADA discrimination claim must be dismissed because the Hospital did not know she was disabled.

**C.    No Retaliation**

As noted previously, Plaintiff abandoned her ELCRA claim as a matter of law by failing to respond to the Hospital's motion for summary judgment argument that she sued under the wrong statute.  But even if she had sued under the PWDCRA, her retaliation claim would still be subject to dismissal because she has failed to meet her *prima facie* case:  she admitted under oath that she never engaged in any protected activity and she cannot prove causation.

1.     *No Protected Activity*

In her Response, Plaintiff contends that she engaged in protected activity by purportedly "complain[ing] during her employment that she was being treated unfairly and was singled out" and sending Mr. Breeser an email stating that "she needed to discuss her concerns." (Docket No. 40 at 17-18). But her contention now is inconsistent with her deposition testimony acknowledging that it "wasn't her style" to make a complaint about being singled out due to her purported disability. (Londo Dep. at 205). At best, Plaintiff made general complaints and workplace grievances, but it is well-settled that those type of complaints and grievances "do not constitute protected activity when the plaintiff does not object to discriminatory conduct against her *based on her membership in a protected class.*" *Jenkins v. Regents of the Univ. of Mich.*, 763 Fed. App'x 545, 553 (6th Cir. Feb. 26, 2019) (emphasis added). Plaintiff never engaged in protected activity and she thus cannot meet that prong of her *prima facie* case.

2.     *No Causation*

To establish causation, Plaintiff must show that her corrective action form, performance improvement plan, and/or termination would not have occurred <u>but for</u> her participation in protected activity. *Marotta v. Ford Motor Co.*, 119 F. Supp. 3d 676, 698 (E.D. Mich. 2015). She cannot meet that burden for several reasons.

First, it is undisputed that Plaintiff failed to do her job throughout her employment, which led to disciplinary actions issued by the Hospital. (Docket No. 37 at 3-11). Because Plaintiff admitted that the problems documented in the disciplines actually occurred, she cannot prove that the disciplines were taken in retaliation for participating in what she now

claims was protected activity.  *See Marotta v. Ford Motor Co.*, 119 F. Supp. 3d 676, 698 (E.D. Mich. 2015).

Second, the law is settled that an employee who engages (or, as here, alleges she engaged) in protected activity is not immune to duly earned disciplinary action or termination.  *See id.*  To give credence to Plaintiff's understanding of the but-for causation standard would create a class of employees that are immune from the consequences of repeated poor performance and deserved critiques.  That is not the law.  *See Green v. City of Phoenix*, 2019 U.S. Dist. LEXIS 144898, *32 (D. Az. Aug. 26, 2019).

Third, Plaintiff urges the Court to ignore undisputed facts by proffering a skewed and incomplete timeline of events to establish causation through temporal proximity. (Docket No. 37 at 18-19).  In doing so, she ignores the reasons for her corrective actions and termination, mischaracterizes undisputed facts in the record, and cites to no legal authority to support her position.  The accurate and complete timeline reveals that Ms. Goodwin first counseled Plaintiff for errors made in patient records within the first few months of Plaintiff's employment.  (Docket No. 37, Londo Dep. at 47-49, 52-54, Ex. 4). Her February 2017 performance review, which Plaintiff misreads to support her view that she was "a good nurse," stated that Plaintiff generally met expectations, but that she was "still working on accuracy [and] thoroughness."  (Docket No. 40 at Ex. 3).  Between then and May 2017, Plaintiff's "accuracy and thoroughness" continued to devolve, so Mr. Breeser transferred her to a different cardiovascular surgeon to work with a smaller patient case load.  (Londo Dep. at 58-59; Breeser Dep. at 20).  Contrary to her new assertion that she was disciplined for taking a four-day absence for an unexplained

4824-8577-5291.2

8

"medical condition," Mr. Breeser only <u>informed</u> her of the switch to Dr. Marder when she returned to work, which was outlined in an employee counseling form.  (Londo Dep. at Ex. 7).  All of those actions occurred <u>before</u> the date that Plaintiff claims in her Response that her medical condition manifested and became an issue in the workplace.  (<u>Compare</u> Londo Dep. at 58-59 and Ex. 7, and Breeser Dep. at 20 <u>with</u> Docket No. 40 at 21).

Plaintiff also ignores the undisputed fact that the Hospital did not issue a corrective action for Plaintiff's ongoing performance errors in mid-June 2017 because she applied for a leave of absence for an undisclosed "medical condition" before it could do so. (Londo Dep. at 58-59; Breeser Dep. at 20).   While she was on leave, Ms. Goodwin uncovered more errors and omissions in patient records by Plaintiff.  (Goodwin Dep. at 26-29; Londo Dep. at 124-26).  Plaintiff admitted those errors and omissions occurred, and they were addressed in a corrective action form when she returned from leave. (Londo Dep. at 124-26).  The corrective action was not given to Plaintiff for work that she was not assigned to complete (as she suggests in her Response), but rather for *her* mistakes that the Hospital uncovered during her leave.  (Londo Dep. at Ex. 12).

Last, Plaintiff's Response ignores the key events leading to her termination. Plaintiff and Ms. Goodwin rated Plaintiff as "inconsistently meeting standards" in her annual evaluation, so the Hospital issued her a formal Performance Improvement Plan, which Plaintiff admitted was justified.  (Londo Dep. at 109, 111-13, 115, 145 and Exs. 11, 13).  Before the Hospital could revisit Plaintiff's improvement under the plan, it learned that she had failed to schedule a procedure for a patient with a mass in his lungs.  (Breeser Dep. at 42-43).  The patient returned to the Hospital with an enlarged tumor and required

4824-8577-5291.2

9

an emergency operation.  (Breeser Dep. at 42-43; Goodwin Dep. at 55).  The Hospital then terminated Plaintiff.  (Breeser Dep. at 36, 42-43; Londo Dep. at 176-77).  She agreed with the content of her termination letter, and she has no reason to believe that Ms. Goodwin or Mr. Breeser did not honestly believe the reasons for her termination were true.  (Londo Dep. at 180, 183).

The Sixth Circuit analyzes temporal proximity cases by assessing "the totality of the circumstances to determine whether an inference of retaliatory motive could be drawn." *Jackson v. Genesee Cty. Rd. Comm'n*, 2020 U.S. Dist. LEXIS 49390, *32 (E.D. Mich. Mar. 23, 2020); *see also Johnson v. Donahoe*, 642 F. App'x 599, 603 (6th Cir. 2016); *Eisenbaum v. Senior Lifestyle Corp.*, 560 F. App'x 496, 499 (6th Cir. 2014); *Williams v. Zurz*, 503 F. App'x 367, 373 (6th Cir. 2012).  Plaintiff's Response does just the opposite by failing to include <u>any</u> of the many instances of her performance deficiencies that placed patient health and safety at risk.  (<u>Compare</u> Docket No. 40 at 2-10, 18-21 <u>with</u> Docket No. 37 at 4-11, 20-26).  Her incomplete analysis and ignorance of the undisputed facts turns temporal proximity law on its head.  *See Williams*, 503 F. App'x at 373 ("[W]here some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.").  The Court should reject Plaintiff's urging to create new law that undermines the well-settled "but for" causation standard.  Her retaliation claim must be dismissed.

4824-8577-5291.2

D.     **No Pretext.**

To prove pretext, Plaintiff suggests that she was not a "problem" for the Hospital until she asked Ms. Goodwin to sit at a different desk or after she purportedly complained about Ms. Harger.  Her proffered explanation is nonsensical and ignores the undisputed facts fatal to her claim.

A material question of fact cannot exist if Plaintiff _agrees_ that the very proffered reasons for her termination actually had basis in fact and motivated her termination.  *See, e.g.*, *Marotta v. Ford Motor Co.*, 119 F. Supp. 3d 676, 685-86 (E.D. Mich. 2015) (dismissing disability retaliation claim because the plaintiff admitted to the proffered reasons for her termination).  That is exactly what Plaintiff has done in this case.  Plaintiff agreed with the following description found in her August 1, 2017 corrective action form:

> Jan . . . has had difficulty managing her time, being accurate in her work, following specific defined processes.  Despite orientation and ongoing mentoring[,] she still has difficulty completing a very reasonable work load, makes serious errors, does not complete her tasks in a timely fashion, doesn't consistently document her progress with tasks, and fails to follow processes.

(Londo Dep. at 122, 124 and Ex. 12).  Plaintiff agreed that she committed additional errors and omissions that Mr. Breeser discovered during her leave of absence:

> Recently Jan was off work for an extended period.  During that time[,] there were extensive amounts of errors discovered including:  Scheduling three surgeries before Dr. Marder had given approval; An extensive amount of orders not completed; Procedures not scheduled; Missing documentation in the [Electronic Medical Records system] showing tasks that were completed; No documentation in the [Electronic Medical Records system] regarding phone or in person conversations with patients; Task bin with 197 tasks that needed follow-up, orders to be completed etc.; Wrong surgery orders used on patients.

4824-8577-5291.2

(*Id.* at 124).  Her Performance Improvement Plan was justified in light of her performance errors, and she offers nothing to disprove that she subsequently neglected to schedule a patient for a pre-operation test, which caused a delay in care.  (Londo Dep. at 145). Finally, in her words, Plaintiff "respected what [the Hospital] wrote" in her termination letter:

> Since August [2017,] you have had the following performance transgressions:  Verbal warning in August not being able to perform your job functions; Annual Performance Review in August your overall rating was 'Inconsistently Meets Standards'; Performance Improvement Plan based on the Inconsistently Meet Standard Review.

(Londo Dep. at 180).  The law does not permit Plaintiff to have it both ways.  Her termination was admittedly justified, and she has nothing to show that the reasons supporting her termination were pretext for discrimination.

Although she does not contend there is any direct evidence of discrimination, Plaintiff points to an alleged conversation in September 2017 where Ms. Harger reportedly told Plaintiff that she could not "stay alone" due to her "medical condition." (Docket No. 40 at 8-9, 16).  Ms. Harger does not recall making any such statement (Harger Dep. at 16, 32-33), but that is not relevant because the purported statement is not material.  The Sixth Circuit has held that a single, stray remark from a coworker not involved in the challenged employment decision, such as is alleged here, is too remote to establish pretext.  *Suits v. The Heil Co.*, 192 F. App'x 399, 407 (6th Cir. 2006); *Garant v. Norfolk Southern Ry.*, 2020 U.S. Dist. LEXIS 63793, *19 (E.D. Mich. Apr. 13, 2020).  It is undisputed that Ms. Harger was not involved in the decision to issue Plaintiff a corrective action or her Performance Improvement Plan nor was she involved in the

4824-8577-5291.2

12

decision to terminate Plaintiff.  (Breeser Dep. at 36).    Thus, it does not tend to make a material fact more or less likely and it does not save Plaintiff's claim from dismissal. *Shefferly v. Health Alliance Plan of Mich.*, 2004 U.S. App. LEXIS 6829, *281 (6th Cir. Apr. 5, 2004) (finding stray remark made by non-decision-maker did not support a finding of disparate treatment).

In a last ditch effort, Plaintiff suggests that the Hospital's proffered reasons *could* be pretext because, maybe, some other LPNs experienced similar work performance issues and were not terminated.  (Docket No. 40 at 20).  The individuals she "identifies" are not similarly-situated in all material respects and thus are not proper comparators. *See Gohl v. Livonia Pub. Sch. Dist.*, 836 F.3d 672, 683 (6th Cir. 2016) ("The comparator requirement is the be all and end all of the circumstantial-evidence test.  If there are no comparators, there is no way to deploy it.").  Plaintiff, in fact, only names Ms. Harger as someone who has "made mistakes" in her job but fails to describe the type of mistake, when it was made, whether the employee had made the same mistakes previously and/or been coached or counseled for them.  (Docket No. 40 at 21).  Plaintiff must offer more than vague accusations about a coworker to properly support her claim using comparators. *See, e.g.*, *Slater v. Progress Energy Serv. Co., LLC*, 2010 U.S. Dist. LEXIS 101060 at *20 (M.D. Fla. Sept. 2010) (rejecting comparator argument and dismissing discrimination claim because the plaintiff made a single "vague accusation" that a coworker was "held to a higher standard").  In any event, Plaintiff ignores the undisputed testimony from Ms. Goodwin that no other LPN committed errors to the extent that Plaintiff

4824-8577-5291.2

13

did.  (Goodwin Dep. at 53).  Plaintiff's inability to establish pretext requires dismissal as a matter of law.

### III.  <u>Conclusion</u>

For the foregoing reasons, as well as those set forth in the Hospital's Motion for Summary Judgment, the Court should dismiss this case with prejudice.

*/s/ T. Connor Dugosh*
Mark W. Peters (TN BPR No. 018422)
T. Connor Dugosh (TN BPR No. 036788)
WALLER LANSDEN DORTCH & DAVIS, LLP
Nashville City Center
511 Union Street, Suite 2700
Nashville, TN 37219
Phone: (615) 244-6380
Facsimile: (615) 244-6804
Email: mark.peters@wallerlaw.com
connor.dugosh@wallerlaw.com

Susan D. MacGregor (P41741)
Kitch Drutchas Wagner Valitutti & Sherbrook
Attorneys for Defendant
1440 West Ridge Street, Suite C
Marquette, MI 49855
(906) 228-0001
susan.macgregor@kitch.com

4824-8577-5291.2